Opinion issued March 19, 2015



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00622-CR
_____

**DONNELL V. PHILLIPS, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1365648**

---

## MEMORANDUM OPINION

After the trial court denied his motion to suppress evidence, appellant,

Donnell V. Phillips Jr., with an agreed punishment recommendation from the State,

pleaded guilty to the offense of unlawful possession of a firearm by a felon[1] and true to the allegation in an enhancement paragraph that he had a prior felony conviction. The trial court, in accordance with the plea agreement, assessed his punishment at confinement for five years. In his sole issue, appellant contends that the trial court erred in denying his motion to suppress.

We modify the trial court's judgment and affirm as modified.

## Background

At a pretrial hearing on appellant's motion to suppress evidence, Houston Police Department ("HPD") Officer X. Flores testified that he, while providing security at an apartment complex, which had had "problem[s] with trespassers," saw appellant trespassing at the complex. He explained that prior to October 23, 2012, although he had had no direct contact with appellant, he had seen him around the complex almost every day.

On the 23rd, Officer Flores became aware that appellant was not a resident of the apartment complex, was not on any lease agreement, and lived, unauthorized, in an apartment with his wife. And appellant, who had received a trespass warning about two days before, had been instructed not to return to the property. Flores learned this from the complex's security team's log, which reflected appellant's name and noted that a trespass warning had been issued to

---

[1]  *See* TEX. PENAL CODE ANN. § 46.04 (Vernon 2011).

him. While Flores discussed appellant's trespassing with the apartment-complex manager, Jenny Rodriguez, on that day, they saw appellant drive a car onto the property. A tow truck driver, who was doing a daily inspection of the property, overheard Flores and Rodriguez's conversation. And he drove his truck over to appellant's car to "block[] him from leaving" so Flores and Rodriguez "could just go over there and talk to him and detain him for trespassing."

Officer Flores then approached appellant, who began "walking back" to his car. After he asked appellant for his name, Flores placed him in handcuffs, stating, "You know you are not supposed to be back on the property," to which appellant replied, "Yes, I know." After handcuffing appellant, Flores asked appellant, "Do you have anything on you that you're not supposed to have?" In response, appellant stated "that he had marijuana and a pistol in the console of [his] vehicle."

Officer Flores also "did a quick little pat on [appellant] to make sure he didn't have any weapons on him," "sat [appellant] down on the curb," and "proceeded to his vehicle and recovered the marijuana and the gun." The entire incident, which included "the combination of detention, asking for officer safety whether he ha[d] anything on him, and smelling the marijuana," occurred within "[t]wo or three seconds, five seconds" or "roughly all at the same time."

Officer Flores explained that at the time he placed appellant in handcuffs, he was not arresting him, but rather "only detaining him at th[at] moment" to verify

3

that he was the individual who had been trespassing on the property. "The [apartment] manager and the assistant manager both came out to the scene and they verified it was [appellant]."

Officer Flores noted that when he detains an individual, he asks "whether they have anything on them" for safety purposes and because he has "been poked by hypodermic needles" before. He placed appellant in handcuffs for his "safety" because he "d[idn't] know if [appellant was] armed or not." Flores was concerned because appellant had his shirt untucked and "[a] weapon could [have been] concealed very easily." And Flores detained appellant to verify that he was the individual who had been trespassing on the property.

On cross-examination, Officer Flores admitted that as he approached appellant, he knew he was going to arrest him. But he also clarified that when he made contact with appellant, he only sought to detain him, and he did not give appellant any "*Miranda* [w]arnings"[2] because "he was not under arrest." Flores explained that he only knew appellant's face prior to October 23, 2012; he did not know his name. And he had been shown a picture of appellant earlier that day.

The trial court denied appellant's motion to suppress his oral statements and the marijuana and firearm found in his car. After appellant filed this appeal, we

---

[2]     *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

abated the case and remanded it to the trial court to issue findings of fact and

conclusions of law regarding the voluntariness of appellant's statements.[3]

The trial court found, in pertinent part, as follows:

> 7. On October 23, 2012, [appellant] was detained by Houston Police Officer . . . Flores for suspicion of the misdemeanor offense of criminal trespass at 12265 Fondren in Houston[,] Harris County, Texas.
>
> 8. As part of the aforementioned detention, Officer Flores placed [appellant] in handcuffs.
>
> 9. During the detention of [appellant], Officer Flores asked [him], "Do you have anything on you that you're not supposed to have?"
>
> 10. In response to the aforementioned question, [appellant] indicated to Officer Flores, that [he] had a pistol and marijuana in his vehicle at the aforementioned location.
>
> 11. After being informed of the items in [appellant's] vehicle, Officer Flores searched the . . . vehicle and recovered marijuana and a gun.

The trial court made the following conclusions of law:

> 2. The investigative detention of [appellant] was lawful and reasonable under the totality of the circumstances in order to ensure officer safety, maintain the status quo, and ensure the continued presence of [appellant] during the course of a brief investigation. *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008); *Chambers v. State*, 397 S.W.3d 777, 781 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

---

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon Supp. 2014); *Urias v. State*, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004).

5

. . .

6. The statements of [appellant] regarding the gun and marijuana being in his vehicle were made during an investigative detention that had not evolved into custodial interrogation.

7. Inasmuch as the statements by [appellant] were not the product of custodial interrogation, the requirements of Tex. Code Crim. Proc. Art. 38.22 § 3 are inapplicable.

8. The non-custodial statements of [appellant] are admissible in their entirety pursuant to Tex. Code Crim. Proc. Art. 38.22.

## Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion and its application of the law to the facts de novo. *Id.* At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility, and it may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When, as here, the trial court makes findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). Unless a trial court abuses its discretion in making a finding not supported by the record, we

will defer to the trial court's fact findings and not disturb the findings on appeal. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

## Motion to Suppress

In his sole issue, appellant argues that the trial court erred in denying his motion to suppress his statements and the marijuana and firearm found in his car because he "was not read his *Miranda* warnings before being questioned by the officer."

The United States Constitution prohibits the use of statements made by a criminal defendant against himself if they are obtained through custodial interrogation without the necessary procedural safeguards to secure the Fifth Amendment right against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966); *Jones v. State*, 119 S.W.3d 766, 772 (Tex. Crim. App. 2003). Similarly, the Texas Code of Criminal Procedure precludes the State's use of the statements of a criminal defendant against himself obtained through a custodial interrogation without compliance with procedural safeguards. TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon Supp. 2014). Notably, however, an individual's Fifth Amendment rights do not come into play if the person is not in custody and any investigation is not yet custodial, and neither *Miranda* nor article 38.22 warnings are required before questioning. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007); *Melton v.* State, 790 S.W.2d 322, 326

(Tex. Crim. App. 1990); *White v. State*, 395 S.W.3d 828, 834 (Tex. App.—Fort Worth 2013, no pet.).

"Custody" for purposes of article 38.22 is consistent with the meaning of "custody" for purposes of *Miranda*. *Gardner v. State*, 433 S.W.3d 93, 98 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Herrera*, 241 S.W.3d at 526). The appropriate inquiry as to whether a person is in "custody," for purposes of their right to receive legal warnings, is "whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714 (1977)); *see also Gardner v. State*, 306 S.W.3d 274, 293–94 (Tex. Crim. App. 2009). A "custodial interrogation" is "'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [his] freedom . . . in any significant way.'" *See Herrera*, 241 S.W.3d at 525 (quoting *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612). The determination of custody is made on a case-by-case basis considering all the surrounding circumstances. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). A person is in custody only if, under the circumstances, an objectively reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Id.* at 254.

Generally, a suspect's detention may constitute custody for purposes of *Miranda* and article 38.22: (1) when an individual is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the person that he is not free to leave; (3) when a law enforcement officer creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) there is probable cause to arrest the person and law enforcement officers do not tell the person that he is free to leave. *Id*. at 255. In the first three situations, the restriction upon freedom of movement must amount to the degree associated with an arrest rather than an investigative detention. *Id*. Under the fourth situation, the existence of probable cause must be manifested to the suspect. *Id*. Simply because an interrogation begins as "noncustodial" does not preclude custody from arising later if the conduct of law enforcement officers causes "a consensual inquiry to escalate into [a] custodial interrogation." *Id.* A defendant bears the burden at trial of proving that his statements were the product of a custodial interrogation. *Herrera*, 241 S.W.3d at 526.

In regard to appellant's assertion that the trial court erred in not suppressing the marijuana and firearm found in his car, we note that, although an individual's statements made during a custodial interrogation must be suppressed if he was not informed of his legal rights, the same is not true of evidence obtained as a result of

his statements.  *See Baker v. State*, 956 S.W.2d 19, 22 (Tex. Crim. App. 1997) (citing *Oregon v. Elstad*, 470 U.S. 298, 314, 105 S. Ct. 1285, 1296 (1985); *Michigan v. Tucker*, 417 U.S. 433, 452, 94 S. Ct. 2357, 2368 (1974)) ("[M]ere noncompliance with *Miranda* does not result in a carryover taint beyond the statement itself.").  Instead, suppression of "the fruits of a defendant's statement" must only occur if "the statement was obtained through actual coercion."  *Baker*, 956 S.W.2d at 22–23.  Here, appellant does not argue that he was coerced, and the record does not reflect any suggestion of coercion.  *See, e.g.*, *Robinson v. State*, No. 01-12-01083-CR, 2013 WL 6047612, at *4 (Tex. App.—Houston [1st Dist.] Nov. 14, 2013, no pet.) (mem. op., not designated for publication).

Accordingly, even if we were to assume a violation of appellant's legal rights in this case, we hold that the trial court did not err in denying his motion to suppress insofar as it pertained to the marijuana and firearm found in appellant's car.  *Cf. Juarez v. State*, No. 04-09-00411-CR, 2010 WL 374399, at *4 (Tex. App.—San Antonio Feb. 3, 2010, pet. ref'd) (mem. op., not designated for publication) (no suppression of marijuana discovered in vehicle's console after defendant's statement).

In regard to the statements that appellant made to Officer Flores, appellant argues that he was "clearly under arrest" because "he had been handcuffed and

10

questioned," "[h]is car had been blocked by a tow truck working in concert with the police," and Flores intended to arrest appellant "at the time he saw [him]."

Officer Flores testified that he handcuffed appellant for "safety" purposes because, as he approached, appellant retreated to his vehicle. Flores was the only law enforcement officer present at the scene and was concerned because appellant had his shirt untucked and "[a] weapon could [have been] concealed very easily." We have previously held that "[t]he reasonable use of handcuffs . . . does not convert an investigative detention to an arrest." *Hilla v. State*, 832 S.W.2d 773, 778 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd); *see also Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997) (mere handcuffing not always equivalent to arrest); *Goldberg v. State*, 95 S.W.3d 345, 360 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (handcuffing alone does not necessarily convert temporary detention into arrest). This is especially true when, as here, a law enforcement officer handcuffs a suspect out of concern for his own safety. *See Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002) (concluding detention, not arrest, had occurred where suspect escorted to patrol car and handcuffed because officer feared for his safety); *Rhodes*, 945 S.W.2d at 117–18 (same); *Mays v. State*, 726 S.W.2d 937, 943–44 (Tex. Crim. App. 1986) (not arrest where lone officer handcuffed two suspects for his protection). The fact that

11

Flores handcuffed appellant because of his safety concerns does not indicate that appellant was in "custody" for purposes of *Miranda* and article 38.22.[4]

In regard to the actions of the tow truck driver, Officer Flores testified that he did "daily inspections of the property" and overheard Flores and the apartment manager's conversation about appellant's previous trespassing. When appellant then drove onto the property, the tow truck driver "drove up to [appellant's] vehicle and blocked him from leaving." Flores, however, did not testify that he requested that the tow truck driver block appellant's car or he worked in conjunction with the tow truck driver to prevent appellant from leaving. Thus, the record reveals that it was not a law enforcement officer that blocked appellant's car, but a third party who acted before Flores could get to appellant. *See Dowthitt*, 931 S.W.2d at 255 (custody may arise "when *law enforcement officers create* a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted") (emphasis added). Further, there is

---

[4] Although appellant argues that he was "clearly under arrest" because "he had been handcuffed *and questioned*," he does not specify which of Officer Flores's questions indicate that he was in "custody." Based on Flores's testimony, he asked appellant for his name, whether he knew he was "not supposed to be back on the property," and whether he "ha[d] anything on [him] that [he] wasn't supposed to have." Such routine questions concerning identification and safety do not constitute an interrogation and do not trigger the required warnings. *See Jones v. State*, 795 S.W.2d 171, 174 n.3 (Tex. Crim. App. 1990); *Ruth v. State*, 167 S.W.3d 560, 571 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Further, as a general matter, questioning "does not by itself constitute custody." *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996); *State v. Rodriguez*, 986 S.W.2d 326, 329 (Tex. App.—El Paso 1999, pet. ref'd).

no evidence that the tow truck driver and Flores worked "in concert." And appellant has not directed us to any case law indicating that the actions of an independent third party may render a suspect in "custody" for purposes of *Miranda* and article 38.22.

Moreover, even if we were to assume that Officer Flores had the tow truck driver block appellant's car, the mere blocking of a car, even by a law enforcement officer does not necessarily indicate that the driver of the car was under arrest or in "custody." *See Rhodes*, 945 S.W.2d at 117 (noting officer's boxing in of suspect's car and drawing weapon did not automatically convert detention into arrest); *Gardner*, 433 S.W.3d at 98–99 (no reasonable belief suspect under arrest even though "patrol cars blocked [his] driveway during search and subsequent interviews"); *see also Simmons v. State*, No. 14-07-00301-CR, 2008 WL 2580380, at *5 (Tex. App.—Houston [14th Dist.] July 1, 2008, no pet.) (mem. op., not designated for publication) ("[T]he means by which Officers Villanueva and Jensen initially confronted [the defendant] in the Jack-in-the-Box parking lot, by activating their emergency equipment and blocking [the defendant's] vehicle in the drive-through line, did not in and of itself render the interaction an arrest."); *Mount v. State*, 217 S.W.3d 716, 725–27 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (detention, not arrest, occurred where "officers blocked in [suspect's] vehicle and asked him to throw his keys out the car window and exit the vehicle"). This is

13

especially true when a law enforcement officer blocks a suspect's car while he is conducting an investigation. *See, e.g.*, *Simmons*, 2008 WL 2580380, at *5 ("The officers' decision to block [the defendant's] vehicle was reasonably necessary to effect the goal of the detention: to safely investigate . . . ."); *Mount*, 217 S.W.3d at 726–27 (detention, not arrest, occurred where, after blocking suspect's car, officers conducted investigation upon detaining suspect); *Bui v. State*, No. 01-05-00456-CR, 2006 WL 2974188, at *2 (Tex. App.—Houston [1st Dist.] Oct. 19, 2006, no pet.) (mem. op., not designated for publication) (suspect's admission not result of custodial interrogation where officer entered back room of store, blocked door, and told suspect that he was conducting investigation); *cf. Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991) (holding suspect under arrest where officer blocked suspect's vehicle, drew weapon and pointed it at suspect, ordered suspect out of vehicle, made suspect lay on the ground, told suspect he would shoot if suspect did not follow directions, and did not conduct any investigation).

Here, while appellant's car was blocked, Flores proceeded to determine appellant's identity and sought confirmation from the apartment manager that appellant was indeed the individual who had been trespassing on the property. The fact that appellant's car was blocked by the tow truck while Flores conducted his investigation does not indicate that appellant was in "custody" for purposes of *Miranda* and article 38.22.

14

Finally, in regard to appellant's argument that he was in "custody" because Officer Flores had formed the intent to arrest him, appellant relies on the following testimony:

[Appellant's counsel]: So when you were approaching [appellant], you knew right then and there that you were going to arrest him?

[Officer Flores]: That is correct, sir.

However, in making a custody determination, "[t]he subjective intent of law enforcement officials to arrest is irrelevant, unless that intent is somehow communicated or otherwise manifested to the suspect." *Ervin v. State*, 333 S.W.3d 187, 205 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *see also Dowthitt*, 931 S.W.2d at 254. Here, even if Flores had formed the intent to arrest appellant as he approached him, appellant does not assert that Flores communicated his intention to appellant. And the evidence does not show that such a manifestation of Flores's intent occurred. Thus, Flores's subjective and undisclosed intent to arrest appellant has no bearing on whether appellant was in "custody" for purposes of *Miranda* or article 38.22. *See Berkemer v. McCarty*, 468 U.S. 420, 441–42, 104 S. Ct. 3138, 3151 (1984) ("Although [officer] apparently decided as soon as respondent stepped out of his car that respondent would be taken into custody and charged . . . [he] never communicated his intention to respondent. A[n] [officer's] unarticulated plan has no bearing on the question of whether a suspect was 'in custody' at a particular

15

time . . . ."); *see also Smith v. State*, No. 01-12-00901-CR, 2014 WL 459001, at *2 (Tex. App.—Houston [1st Dist.] Feb. 4, 2014, pet. ref'd) (mem. op., not designated for publication) ("In evaluating a custody determination, we examine the objective factors surrounding a detention; we do not examine the undisclosed, subjective beliefs of the detaining officer or the accused.").

Having examined the totality of the circumstances, we conclude that there is nothing in the record to suggest a restraint of appellant's freedom of movement of the degree associated with a formal arrest. Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress insofar as it pertained to his oral statements made prior to being advised of his legal rights.

We overrule appellant's sole issue.

## Modification of Judgment

The written judgment of the trial court, under the heading of "special findings or orders," states "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED." However, the trial court's "Certification of Defendant's Right to Appeal" states that this "is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial, and not withdrawn or waived, and the defendant has the right of appeal." *See* TEX. R. APP. P. 25.2(d) (requiring trial court to certify defendant's right of appeal). Further, the trial court stated, on the record at the plea hearing, that because the court followed the plea agreement,

16

appellant "ha[s] a very limited right to appeal [the trial court's] ruling for the motion to suppress. . . . That is the only issue [appellant is] allowed to appeal."

A plea-bargaining defendant may appeal matters raised by written motion filed and ruled upon before trial. TEX. CODE CRIM. PROC. ANN. art. 44.02 (Vernon 2006); TEX. R. APP. P. 25.2(a)(2)(A); *see also Shankle v. State*, 119 S.W.3d 808, 811–12 (Tex. Crim. App. 2003) (analyzing Texas Code of Criminal Procedure article 44.02 and Texas Rule of Appellate Procedure 25.2(b)). When there is a conflict between a trial court's "Certification of Defendant's Right to Appeal" and a judgment concerning a defendant's right to appeal, the certification controls, especially when the remainder of the record supports the statement in the certification. *See Grice v. State*, 162 S.W.3d 641, 645 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). We further note that the State has not argued to this Court that appellant has waived his right of appeal. *See Willis v. State*, 121 S.W.3d 400, 403 (Tex. Crim. App. 2003) (concluding record demonstrated defendant's intention to appeal, despite boilerplate waiver in plea agreement, when State did not assert waiver in court of appeals); *see also Tran v. State*, No. 01-11-00141-CR, 2012 WL 3133925, at *10 (Tex. App.—Houston [1st Dist.] Aug. 2, 2012, pet. ref'd) (mem. op., not designated for publication) (removing waiver language from judgment where certification reflected defendant's right to appeal and State did not argue waiver).

Although the parties have not addressed the propriety of the trial court judgment's "special finding[] or order[]" regarding appellant's right of appeal, based on our review, we conclude that this portion of the judgment does not accurately comport with the record. *See Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (authority to correct incorrect judgment not dependent upon request of any party). "[A]n appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth when the matter has been called to its attention by any source." *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *see also* TEX. R. APP. P. 43.2(b). Because the code of criminal procedure and rules of appellate procedure permit plea-bargaining defendants to appeal rulings on pre-trial motions, the trial court certified appellant's right of appeal, and the State does not argue that appellant has waived his right of appeal, the record in this case supports modification of the judgment. *Cf. Tran*, 2012 WL 3133925, at *10. Accordingly, we modify the trial court's judgment to strike the special finding or order of "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED."

## Conclusion

We affirm the judgment of the trial court as modified.


Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Do not publish.   TEX. R. APP. P. 47.2(b).