# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 19, 2012

Lyle W. Cayce
Clerk

No. 11-50094

UNITED STATES OF AMERICA,

Plaintiff - Appellant

v.

MICHAEL ANGELO CAVAZOS,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before BENAVIDES and PRADO, Circuit Judges, and ALVAREZ, District Judge[*]

BENAVIDES, Circuit Judge:

This interlocutory appeal is brought by Plaintiff-Appellant the United States of America (the "Government") to reverse the district court's order suppressing certain incriminating statements made by Defendant-Appellee Michael Angelo Cavazos ("Cavazos"). We AFFIRM.

---

[*] District Judge of the Southern District of Texas, sitting by designation.

No. 11-50094

## FACTUAL AND PROCEDURAL BACKGROUND

On September 1, 2010, between 5:30 a.m. and 6:00 a.m., Cavazos woke to banging on his door and the shining of flashlights through his window. U.S. Immigration and Custom Enforcement ("ICE") Agents, assisted by U.S. Marshals, Texas Department of Public Safety personnel, and Crane Sheriff's Department personnel, were executing a search warrant on Cavazos's home. The warrant was issued on the belief that Cavazos had been texting sexually explicit material to a minor female. After Cavazos's wife answered the door, approximately fourteen law enforcement personnel entered Cavazos's residence.

Immediately upon entering, government agents ran into Cavazos's bedroom, identified him, and handcuffed him as he was stepping out of bed. Agents then let Cavazos put on pants before taking him to his kitchen. Cavazos's wife and children were taken to the living room. Cavazos remained handcuffed in the kitchen, away from his family, while the entry team cleared and secured the home. ICE Agents Le Andrew Mitchell and Eric Tarango then uncuffed Cavazos and sat with him in the kitchen for approximately five minutes while other officers secured the home.

Once the house was secured, agent Tarango asked Cavazos if there was a private room in which they could speak. Cavazos suggested his son's bedroom. In the bedroom, Cavazos sat on the bed while the two agents sat in two chairs facing him. The agents asked Cavazos if he wanted the door open, but Cavazos said to keep the door closed. Agents Mitchell and Tarango informed Cavazos that this was a "non-custodial interview," that he was free to get something to eat or drink during it, and that he was free to use the bathroom. The agents then began questioning Cavazos without reading him his *Miranda* rights.

About five minutes into the initial interrogation, Cavazos asked to use the restroom. Agents then searched the restroom for sharp objects and inculpatory evidence. Once cleared, they allowed Cavazos to use the bathroom, but one

2

agent remained outside the door, which was left slightly open so the agent could observe Cavazos. Once finished, Cavazos, followed by an agent, went to the kitchen to wash his hands, as the restroom's sink was broken. Cavazos then returned to his son's bedroom, and the interrogation resumed.

After Cavazos returned to the bedroom, officers interrupted the interrogation several times to obtain clothing to dress Cavazos's children. The officer would ask Cavazos for an article of clothing, which Cavazos would retrieve from the drawers and hand to the officer. Agents Mitchell and Tarango would then continue the questioning.

At some point during the interrogation, Cavazos asked to speak with his brother, who was his supervisor at work. The agents brought Cavazos a phone and allowed him to make the call, instructing Cavazos to hold the phone so that the agents could hear the conversation. Cavazos told his brother that he would be late for work.

Finally, the agents asked Cavazos if he had been "sexting" the victim. Cavazos allegedly admitted that he had, and also described communications with other minor females. After the interrogation was over, Cavazos agreed to write a statement for the agents in his kitchen. While Cavazos began writing the statement, an agent stood in the doorway and watched him.

Cavazos wrote his statement for approximately five minutes before agents Mitchell and Tarango interrupted him. At that point the agents formally arrested Cavazos and read him his *Miranda* rights. From beginning to end, the interrogation of Cavazos lasted for more than one hour, and the agents' conduct was always amiable and non-threatening. Subsequently, Cavazos was indicted for coercion and enticement of a child, and for transferring obscene material to a minor.

On November 2, 2010, Cavazos moved to suppress the statements he made before he was read his *Miranda* rights. On January 14, 2011, a suppression

No. 11-50094

hearing was held. On January 19, 2011, Judge Robert A. Junell granted Cavazos's motion, and, on January 26, 2011, issued a memorandum stating the reasons for his order. Thereafter, pursuant to 18 U.S.C. § 3731, the Government filed this interlocutory appeal of the district court's order.

## STANDARD OF REVIEW

In an appeal from a district court's ruling on a motion to suppress, this Court reviews factual findings in support of the ruling under the clearly erroneous standard and legal conclusions *de novo*. *United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir. 1993). The evidence is viewed in the light most favorable to the party who prevailed in the district court. *United States v. Cardenas*, 9 F.3d 1139, 1147 (5th Cir. 1993).

## ANALYSIS

The Government appeals the district court's finding that Cavazos was subjected to a custodial interrogation when he was interrogated by Agents Mitchell and Tarango. Except for some minor issues addressed below, the Government does not challenge the district court's factual findings. Rather, the Government argues that the district court improperly weighed the evidence in finding that Cavazos was subjected to a custodial-interrogation.

"*Miranda* warnings must be administered prior to 'custodial interrogation.'" *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988) (quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). "A suspect is . . . 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id*. at 596. "Two discrete inquires are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave."

4

No. 11-50094

*J.D.B. v. N. Carolina*, 131 S. Ct. 2394, 2402 (2011). "The reasonable person through whom we view the situation must be neutral to the environment and to the purposes of the investigation—that is, neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances." *Bengivenga*, 845 F.2d at 596.

Custody for *Miranda* purposes requires a greater restraint on freedom than seizure under the Fourth Amendment. *Bengivenga*, 845 F.2d at 598 (noting "a Fourth Amendment seizure does not necessarily render a person in custody for purposes of *Miranda*"); *see also Berkemer v. McCarty*, 468 U.S. 420, 437–38 (1984) (holding *Miranda* warnings not required during traffic stop; finding brevity, spontaneity, and public-nature of stop, and small number of officers involved, rendered atmosphere insufficiently "police dominated" to be coercive). A determination of whether a defendant is "in custody" for *Miranda* purposes depends on the "totality of circumstances." *California v. Beheler*, 463 U.S. 1121, 1125 (1983). "[T]he subjective views harbored by either the interrogating officers or the person being questioned are irrelevant." *J.D.B.*, 131 S. Ct. at 2402 (internal quotation marks omitted).

Here, the totality of circumstances, drawn from the record as seen in the light most favorable to Cavazos, indicates Cavazos was in custody at the time he made his incriminating statements. Just after 5:30 a.m., Cavazos was awakened from his bed, identified and handcuffed, while more than a dozen officers entered and searched his home; he was separated from his family and interrogated by two federal agents for at least an hour[1]; he was informed he was free to use the bathroom or get a snack, but followed and monitored when he sought to do so;

---

[1] "[A] detention of approximately an hour raises considerable suspicion" that an individual has been subjected to a custodial interrogation. *United States v. Harrell*, 894 F.2d 120, 124 n.1 (5th Cir. 1990). The Government identifies no evidence in the record to support their contention that Cavazos's incriminating statements were made early in the interrogation.

and he was allowed to make a phone call, but only when holding the phone so that the agents could overhear the conversation.[2] An interrogation under such circumstances, and those others discussed above, would lead a reasonable person to believe that he was not "at liberty to terminate the interrogation and leave," *J.D.B.*, 131 S. Ct. at 2402, notwithstanding the fact that the interrogation occurred in his home and he was informed the interrogation was "non-custodial."

In arguing *Miranda* warnings were not necessary, the Government relies on the fact that Cavazos was interrogated in his own home, a fact which, taken alone, lessens the likelihood of coercion. *See United States v. Fike*, 82 F.3d 1315, 1325 (5th Cir. 1996), *overruled on other grounds by United States v. Brown*, 161 F.3d 256 (5th Cir. 1998). *Miranda*, however, does not allow for a simple in-home vs. out-of-home dichotomic analysis. Here, significant facts weigh against the presumption that an in-home interrogation is non-coercive: a large number of officers[3] entered Cavazos's home, without his consent, early in the morning, and Cavazos's subsequent movement about the home was continually monitored. *See United States v. Craighead*, 539 F.3d 1073, 1085 (9th Cir. 2008) (suppressing statements made during in-home interrogation where home was "a police-dominated atmosphere"); *United States v. Mittel-Carey*, 493 F.3d 36, 40 (1st Cir. 2007) (finding in-home interrogation custodial where, *inter alia*, search conducted early in the morning by eight officers, and officers exercised physical control over defendant); *cf. United States v. Hargove*, 625 F.3d 170, 181 (4th Cir. 2010) (finding in-home interrogation non-custodial; noting "[the defendant] was permitted to move about his house"). Similarly, although Cavazos was allowed

---

[2] The legality of such detention pending the execution of the search warrant, which Cavazos does not dispute here, does not change the Court's inquiry with respect to *Miranda*.

[3] While only two officers interrogated Cavazos, the presence of other officers at the location is also relevant to the Court's inquiry. *See Fike*, 82 F.3d at 1325 (5th Cir. 1996) (weighing presence of officers in home during search against fact only two officers interviewed defendant).

to speak to his brother on the phone, the agents had him position the phone in such a way that they could listen, indicating that they had sufficient control of Cavazos to require him to do so, and implying Cavazos enjoyed no privacy at that time.  Also, Cavazos was immediately located and handcuffed at the start of the search, demonstrating that the agents sought out Cavazos and had physical dominion over him.  *See Bengivenga*, 845 F.2d at 597 n.16 ("The *awareness* of the person being questioned by an officer that he has become the 'focal point' of the investigation, or that the police have ample cause to arrest him, may well lead him *to conclude, as a reasonable person*, that he is not free to leave, and that *he has* been significantly deprived of his freedom . . . ." (emphasis in original) (citation omitted)).  While the handcuffs were removed prior to interrogation, the experience of being singled out and handcuffed would color a reasonable person's perception of the situation and create a reasonable fear that the handcuffs could be reapplied at any time.  *Cf. Hargrove*, 625 F.3d at 179 (noting the defendant was "never placed in handcuffs").

The Government places significant emphasis on the fact that the agents informed Cavazos that the interview was "non-custodial."  Such statements, while clearly relevant to a *Miranda* analysis, are not a "talismanic factor."  *See Hargrove*, 625 F.3d at 180 (quoting *Davis v. Allsbrooks*, 778 F.2d 168, 171-72 (4th Cir. 1985)).  They must be analyzed for their effect on a reasonable person's perception, and weighed against opposing facts.  Here, several facts act to weaken the agents' statement such that it does not tip the scales of the analysis.  First, to a reasonable lay person, the statement that an interview is "non-custodial" is not the equivalent of an assurance that he could "terminate the interrogation and leave."  *See J.D.B.*, 131 S. Ct. at 2402; *cf. United States v. Perrin*, 659 F.3d 718, 721 (8th Cir. 2011) (noting defendant informed he "did not have to answer questions"); *Hargrove*, 625 F.3d at 180 (noting defendant informed he was "free to leave").  Second, uttered in Cavazos's home, the

No. 11-50094

statement would not have the same comforting effect as if the agents had offered to "leave at any time upon request." *See Harrell*, 894 F.2d at 125 (finding defendant was not in custody during in-home interrogation when, *inter alia*, he was informed police would leave on his request); *see also, Craighead*, 539 F.3d at 1082-83, 1088 (finding assurance defendant was "free to leave" had lessened effect when interrogation occurred in defendant's home).[4] This is not to say that a statement by police to a defendant that an interrogation is "non-custodial" does not inform our decision as to the necessity of a *Miranda* warning when an interrogation is conducted inside the home. Instead, we recognize the "totality of circumstances" *Miranda* commands, and we note that statements made in different circumstances will have different meanings and differently affect the coercive element against which *Miranda* seeks to protect.

In engaging in the inquiry required by *Miranda*, the Court is mindful that no single circumstance is determinative, and we make no categorical determinations. Reviewing, in totality, the unique circumstances presented in the record here, in the light most favorable to Cavazos, the party prevailing below, we find a reasonable person in Cavazos's position would not feel "he or she was at liberty to terminate the interrogation and leave." *See J.D.B.*, 131 S. Ct. at 2402.

## CONCLUSION

For the reasons stated above, the order of the district court is AFFIRMED.

---

[4] Although the Government asserts Cavazos was informed that "he was free to go," the record provides no clear support for such proposition. Rather, the district court found that the agents' only statement was that the interview was "non-custodial," and the Government fails to demonstrate clear error in such determination.