JAMES E. GRAVES, JR., Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s opinion that neither the rifles nor Ortiz’s first oral statement should be suppressed. However, I dissent from the majority’s holding admitting Ortiz’s second oral statement and written statement, which were both made during the questioning inside the agent’s car. In these statements, Ortiz answered more detailed questions about his purchase of the rifles and admitted making a straw purchase in exchange for money. In my view, these statements were obtained in violation of Miranda and should be suppressed.
*234 As the majority states, it is well-settled that the “the prosecution may not use statements ... stemming from custodial interrogation of the defendant unless” the defendant has been advised of his right to remain silent and his right to counsel. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Custodial interrogation is “questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” Id. A suspect is “in custody for Miranda purposes when placed under formal arrest or when a reasonable person in the suspect’s position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.” United States v. Bengivenga, 845 F.2d 593, 596 (5th Cir.1988) (en banc) (internal quotation marks omitted); United States v. Cavazos, 668 F.3d 190, 193 (5th Cir.2012).
“Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave.” Cavazos, 668 F.3d at 193 (quoting J.D.B. v. N. Carolina, — U.S. -, 131 S.Ct. 2394, 2402, 180 L.Ed.2d 310 (2011)). The custody determination “depends on the totality of circumstances.” Cavazos, 668 F.3d at 193 (quotation omitted). Important factors include, but are not limited to: (1) the length of the questioning; (2) the location of the questioning; (3) the accusatory, or non-accusatory, nature of the questioning; (4) the amount of restraint on the individual’s physical movement; and (5) statements made by officers regarding the individual’s freedom to move or leave. United States v. Wright, 777 F.3d 769, 775 (5th Cir.2015) (citations omitted). However, “no single circumstance is determinative, and we make no categorical determinations.” Cavazos, 668 F.3d at 195.
I would find that the totality of the circumstances surrounding Ortiz’s interrogation inside the agent’s car rose to a level of custody equivalent to formal arrest, sufficient that a reasonable person would not have felt free to terminate the questioning and leave.
Several factors lead me to this conclusion. First, the agents followed Ortiz to the gas station based on a specific suspicion of a straw purchase, and immediately singled him out for additional questioning. See Cavazos, 668 F.3d at 194-95 (finding it significant that the defendant “was immediately located and handcuffed at the start of the search, demonstrating that the agents sought out Cavazos and had physical dominion over him”). “The awareness of the person being questioned by an officer that he has become the ‘focal point’ of the investigation ... may well lead him to conclude, as a reasonable person, that he is not free to leave, and that he has been significantly deprived of his freedom.” Bengivenga, 845 F.2d at 597 n. 16 (emphases omitted). Here, Ortiz was almost immediately told he was being questioned by an agent who specialized in investigating straw purchases. As more officers arrived on the scene, Ortiz was instructed to get in the back seat of an agent’s car with two agents who asked him, according to Agent Milligan’s testimony, “more in depth questions” regarding the guns he had just purchased. At the end of the questioning, Milligan wrote a detailed statement regarding the purchase and Ortiz’s admissions and had Ortiz sign it. Regardless of whether the questioning was particularly “accusatory” in tone, it was specific, detailed and in reference to a particular offense for which the agents had clearly singled out Ortiz as a suspect. *235 And, of course, Ortiz’s co-conspirator, Diaz-Mesa, was given Miranda warnings while Ortiz was not, although the two had acted in concert during the purchase and were in virtually identical circumstances during the stop. By contrast, in Wright, we found that Wright was not subject to custodial interrogation and found it significant that the agents were searching a house where Wright was one of several occupants removed during a search, and Wright was not immediately singled out. Wright, 777 F.3d at 776.
Although the stop was conducted at a gas station, the stop was neither spontaneous nor brief; the detailed questioning occurred once the agents had placed Ortiz in the backseat of one of their cars; and seven agents were on the scene in six separate cars. This scene bore little resemblance to an ordinary traffic stop. It was a much more coercive and “police-dominated” situation. See Berkemer v. McCarty, 468 U.S. 420, 437-39, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (finding that brevity, spontaneity, and public nature of ordinary traffic stop, and small number of officers involved, generally rendered atmosphere insufficiently “police dominated” to be coercive). While two officers actually questioned Ortiz inside the car, we have explicitly noted that during an interrogation, “the presence of other officers at the location is also relevant to the Court’s inquiry.” Cavazos, 668 F.3d at 194 n. 3 (citing United States v. Fike, 82 F.3d 1315, 1325 (5th Cir.1996)). In fact, Ortiz was approached by at least four agents who asserted their control over him before he was interrogated in the car: Milligan and Phan, who approached him with guns drawn and removed him from the car at the beginning of the stop; Smith, who ordered Ortiz cuffed and frisked; and Bal-esteros, who, along with Milligan, instructed Ortiz to get inside the police car and conducted the questioning.
The length of the detention also differentiated this situation from an ordinary non-custodial stop. By the time Ortiz exited Balesteros’s car, he had been detained for up to sixty minutes, and the questioning in the car alone lasted between twenty and forty minutes. See United States v. Chavira, 614 F.3d 127, 134 (5th Cir.2010) (finding custodial interrogation where suspect was questioned for thirty to forty minutes at secondary immigration inspection); Cavazos, 668 F.3d at 194 & n. 1 (citing United States v. Harrell, 894 F.2d 120, 124 n. 1 (5th Cir.1990) (noting that “a detention of approximately an hour raises considerable suspicion” that a defendant is in custody)). By contrast, an ordinary traffic stop is non-custodial because it is “presumptively temporary and brief,” thus setting it apart from “stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek.” Berkemer, 468 U.S. at 437-38, 104 S.Ct. 3138. While forty minutes is not necessarily “prolonged,” in the circumstances of Ortiz’s situation, the questioning in the back of the agent’s car was more akin to stationhouse interrogation than to those brief questions that are typically incident to a traffic stop.
Further, Ortiz had been handcuffed for about ten minutes prior to the interrogation in the car, which is a factor that we have previously found to be relevant. Cavazos, 668 F.3d at 194-95. As Cavazos noted, ‘While the handcuffs were removed prior to interrogation, the experience of being singled out and handcuffed would color a reasonable person’s perception of the situation and create a reasonable fear that the handcuffs could be reapplied at any time.” Id. at 195.
The agents also confiscated Ortiz’s keys at some point, significantly restraining his *236 freedom to leave the situation, and did not return them until after the guns were seized. See Chavira, 614 F.3d at 134 (finding it significant that Chavira’s birth certificate and identification were confiscated at immigration inspection). The majority assumes that Ortiz had his own keys during the questioning, due to Agent Milli-gan’s failure to remember when the keys were initially confiscated. The district court made no specific finding regarding the keys. But the record is clear that Milligan used the keys to open the hatch of Ortiz’s Blazer to seize the rifles after his interrogation of Ortiz in the car, and that Milligan obtained the keys from another agent in order to do so, not from Ortiz. I am not convinced that, even assuming Ortiz did have his keys, this fact would have led a reasonable person to perceive himself as free to jump out of the agent’s car during the ongoing questioning and into his own to terminate the interrogation. The lack of clarity regarding possession of the keys does not undermine the other factors'surrounding the coercive situation faced by Ortiz.
While Ortiz was told he was not under arrest, such statements are not a “talis-manic factor.” Cavazos 668 F.3d at 195. Instead, we must analyze these statements “for their effect on a reasonable person’s perception” and weigh them “against opposing facts.” Id. Here, Ortiz was told initially that he was not under arrest. But the agents’ subsequent actions — including the arrival of multiple additional agents, the handcuffing, and the agents placing Ortiz inside the police car to ask him in depth questions about a specific suspected offense — would indicate otherwise to a reasonable person. Further, to a reasonable lay person, a statement that he is not “under arrest” is not “the equivalent of an assurance that he could terminate the interrogation and leave.” Cavazos, 668 F.3d at 195 (finding that telling the defendant that an interview is “non-custodial” is not the equivalent of telling him “he could terminate the interrogation and leave”); see United States v. Colonna, 511 F.3d 431, 436 (4th Cir.2007) (defendant was informed he was “not under arrest” but “was never told he was free to leave or that he did not have to respond to questions”); cf. United States v. Perrin, 659 F.3d 718, 721 (8th Cir.2011) (defendant was informed he “did not have to answer questions”); United States v. Hargrove, 625 F.3d 170, 179 (4th Cir.2010) (defendant was informed “he was not under arrest and that he was free to leave”). By contrast, in Wright, the officers specifically told the defendant “several times” that he was “free to leave” before questioning him, which was a “crucial” factor in the outcome of that case. Wright, 777 F.3d at 776. Here, the agents never told Ortiz that he was free to leave or that he did not have to answer questions.
While no single factor is determinative, the totality of the circumstances surrounding Ortiz’s statements in the agent’s car indicate a level of restraint on par with .arrest and would indicate to a reasonable person that he was not free to terminate the interrogation and leave. See Cavazos, 668 F.3d at 193-95. I therefore dissent from the majority’s holding that Ortiz’s second oral statement and written statement should not be suppressed. I concur in all other respects.