**Affirmed and Memorandum Opinion filed January 10, 2023.**



**In The**

# Fourteenth Court of Appeals

_____

## NO. 14-21-00491-CR
_____

**RICARDO OLIVAREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 1567655**

### MEMORANDUM OPINION

A jury found appellant guilty of the first-degree felony of murder. Tex. Penal Code Ann. § 19.02. The trial court assessed punishment of imprisonment for 40 years. Tex. Penal Code Ann. § 12.32(a). In two issues, appellant challenges the trial court's denial of his pretrial motion to suppress two statements he made to police. In issue 1, appellant contends the statements were inadmissible due to use of an improper two-step interrogation method. In issue 2, appellant argues the statements were inadmissible because they were the product of custodial

interrogation conducted without the warnings required by *Miranda v. Arizona* and Code of Criminal Procedure article 38.22. *See Miranda*, 384 U.S. 436, 444 (1966); Tex. Code Crim. Proc. Ann. art. 38.22. We affirm.

## I. BACKGROUND

On October 15, 2017, sergeant Francisco Garcia was dispatched to appellant's home and advised that appellant and his common-law wife, the complainant, had been involved in a struggle over a gun during which complainant was accidentally shot. Appellant was handcuffed and placed in a patrol vehicle for approximately four hours. Garcia asked appellant if he was willing to do a recorded "walkthrough" at the scene; appellant agreed. Appellant was not handcuffed during the "walkthrough statement," which took approximately 15 minutes. During the walkthrough, appellant told police that he and complainant had been in a physical altercation, and that a gun they were fighting over discharged during the struggle.

Garcia asked appellant if he was willing to take a voluntary polygraph examination, to which appellant agreed. Appellant was transported in a patrol vehicle to the Harris County Sheriff's homicide office (the "station"). Before transport, Garcia explained to appellant that appellant was not under arrest, and appellant acknowledged that he understood. Appellant's handcuffs were removed when he left the police vehicle. Appellant met with deputy Roxy Simmons, who advised appellant that the polygraph examination was voluntary and that appellant was free to leave at any time. While preparing for the exam, Simmons asked appellant if appellant would be able to answer "no" to the question, "Did you intentionally shoot your wife?" Appellant indicated he would not be able to honestly state that he did not shoot his wife. Simmons suggested appellant speak to Garcia and appellant agreed.

2

Garcia questioned appellant in an interview room at the station (the "station statement"). Appellant was not handcuffed or otherwise restrained during the interview. Before taking the second recorded statement, Garcia informed appellant that the statement was voluntary and appellant was free to leave. Appellant stated that he understood his statement was voluntary and did not request to leave. During the recorded statement, Garcia interrupted appellant and again confirmed that appellant was agreeing to give a voluntary statement. Garcia asked appellant whether he understood that he was not under arrest and that he was free to leave at any time. Appellant said he understood. During the station statement, appellant said that, after complainant scratched him and attempted to take the gun from him, he shot her because he was afraid for his life. Appellant was then given *Miranda* warnings, following which he gave a third statement to the police.

Complainant died from the gunshot wound and appellant was charged with murder. Before trial, appellant moved to suppress the walkthrough statement and the station statement, as well as the third statement taken at the station after appellant had been given *Miranda* warnings. The trial court suppressed the third, post-*Miranda* statement, but denied appellant's motion to suppress the walkthrough and station statements.

## II. ANALYSIS

### A. Two-step interrogation

In issue 1, appellant argues that the trial court erred by denying his motion to suppress his pre-*Miranda* warning statements because the officers involved employed an impermissible "two-step" interrogation technique. "A 'two-step' or 'question first, warn later' interrogation occurs when the police interrogate a suspect without giving him his *Miranda* warnings, obtain a confession from him, then give him the *Miranda* warnings, and get him to repeat the confession he made

3

previously." *Vasquez v. State*, 483 S.W.3d 550, 553 (Tex. Crim. App. 2016) (citing *Missouri v. Seibert*, 542 U.S. 600, 605–06 (2004)). Under such circumstances, the *Miranda* warnings are ineffective, as "there is no practical justification for accepting the formal warnings as compliance with *Miranda*, or for treating the second stage of interrogation as distinct from the first, unwarned and inadmissible segment." *Seibert*, 542 U.S. at 612. Accordingly, post-*Miranda* warning statements obtained by the two-step process are inadmissible. *See Martinez v. State*, 272 S.W.3d 615, 620–27 (Tex. Crim. App. 2008)

The situation here, however, is different because the trial court suppressed the statement that appellant gave after the *Miranda* warning. In contrast to the cases discussed above, the question here is not whether post-*Miranda* warning statements should be suppressed, as the only statement meeting that description was, in fact, suppressed. Instead, the case concerns whether pre-*Miranda* warning statements should be suppressed. And the way to answer that question is to determine, as we address in issue 2, whether the pre-*Miranda* statements were the result of custodial interrogation. If appellant was in custody when the statements were given, then the lack of *Miranda* warnings renders the statements inadmissible. *See Miranda*, 384 U.S. at 444. If, on the other hand, appellant was not in custody when he gave the statements, then *Miranda* warnings were not required at all. *See California v. Beheler*, 463 U.S. 1121, 1121–25 (1983). Either way, the reasoning of *Siebert* and other cases discussing the two-step interrogation method, addressing circumstances in which post-*Miranda* warning statements may be inadmissible, is inapplicable.

We overrule issue 1.

## B. Custodial interrogation

In issue 2, appellant argues that the trial court reversibly erred by not

suppressing the walkthrough statement and the station statement. Appellant argues that both statements were products of custodial interrogation without the requisite warnings under *Miranda* and Code of Criminal Procedure article 38.22.[1] *See Miranda*, 384 U.S. at 444; Tex. Code Crim. Proc. Ann. art. 38.22.

Under *Miranda*, the State may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. 384 U.S. at 444. Likewise, article 38.22 provides that "[n]o oral . . . statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless," among other things, "prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning." Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a).

Determining whether a custodial interrogation occurred involves examining both whether the accused was "in custody" and whether he was "interrogated." *See Miranda*, 384 U.S. at 444; Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a). The parties do not dispute that the questioning by police during the walkthrough and station statements was "interrogation" for purposes of *Miranda* and article 38.22.

---

[1] At oral argument, the State contended that a dashcam recording taken before the walkthrough statement showed that appellant had been given *Miranda* warnings. This video, however, was not offered or admitted into evidence at the suppression hearing. Moreover, at the suppression hearing, the State did not attempt to prove that appellant had been given the requisite warnings before making the walkthrough statement or present evidence that the walkthrough statement was a continuation of some earlier line of questioning. Finally, the parties did not attempt to relitigate this issue at trial. *See Black v. State*, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012) ("In cases in which the trial court is never asked, or is asked but declines, to exercise its discretionary authority to reopen the suppression hearing, appellate review of its ruling on the motion to suppress is ordinarily limited to that evidence presented at the pretrial hearing—the evidence that was before the court at the time of its decision."). Accordingly, we will not consider the dashcam recording as part of the suppression analysis. *See id.*

5

*Cf. Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) ("[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.").

Accordingly, issue 2 requires a determination of whether appellant was "in custody" when giving the statements. *Cf. Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (meaning of "custody" is same for purposes of both *Miranda* and article 38.22). A person is considered "in custody" if a reasonable person in the same circumstances would have perceived his physical freedom to be restricted "to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)). "The determination of custody must be made on an ad hoc basis, after considering all of the (objective) circumstances." *Dowthitt*, 931 S.W.2d at 255 (citing *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985)). The court of criminal appeals has established four general situations which may constitute custody: (1) if the suspect is physically deprived of his freedom in any significant way; (2) if a law-enforcement officer tells the suspect not to leave; (3) if a law-enforcement officer creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; or (4) if there is probable cause to arrest the suspect, and the law-enforcement officer does not tell the suspect he is free to leave. *Gardner v. State,* 306 S.W.3d 274, 294 (Tex. Crim. App. 2009).

In reviewing the trial court's ruling on a motion to suppress statements made as a result of custodial interrogation, we apply a bifurcated standard of review. *Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012) (citing *Guzman v.*

*State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We review the ruling in light of the totality of the circumstances, giving total deference to the trial court on questions of historical fact, as well as its application of law to fact questions that turn on credibility and demeanor. *Pecina*, 361 S.W.3d at 79; *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). But we review de novo the trial court's rulings on questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Pecina*, 361 S.W.3d at 79; *Leza*, 351 S.W.3d at 349. We view the record in the light most favorable to the trial court's ruling and reverse the judgment only if it lies outside the zone of reasonable disagreement. *Hereford v. State*, 339 S.W.3d 111, 118 (Tex. Crim. App. 2011).

## 1. Walkthrough statement

According to the trial court's findings, before the walkthrough statement, appellant had been handcuffed and placed in a police car for approximately four hours. There are no findings, and no evidence in the record, that appellant was ever told he was not under arrest or that he was free to go. During the walkthrough statement itself, appellant's handcuffs were removed, and appellant was told the statement was voluntary. The video shows that, during the walkthrough of the house, appellant was accompanied by three officers.

Appellant argues that a reasonable person in the same circumstances would have perceived his physical freedom to be restricted to the degree associated with a formal arrest. *Dowthitt*, 931 S.W.2d at 254; *see also Ortiz v. State*, 421 S.W.3d 887, 891 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("The defendant bears the initial burden of demonstrating that a statement was the product of custodial interrogation, and the State has no burden to show compliance with *Miranda* until the defendant meets the initial burden.") (citing *Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005)). The State argues that appellant's circumstances

were consistent with an investigative detention, which is not considered formal arrest for purposes of the Fourth Amendment. *See* U.S. Const. amend IV; *Terry v. Ohio*, 392 U.S. 1, 13 (1968).

The court of criminal appeals recently reiterated the standards for whether an interrogation is "custodial" when the circumstances involve an investigative detention. The court explained that, when the basis for custody is restriction of movement, "the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention." *Wexler v. State*, 625 S.W.3d 162, 168 (Tex. Crim. App. 2021). The court emphasized, however, that the "'ultimate inquiry' pertinent to the custody question for *Miranda* purposes" remains "whether a reasonable person in the defendant's circumstances would have believed that her freedom of movement was restricted to the degree associated with a formal arrest." *Id.* at 169.

In the instant case, the sheer length and circumstances of the detention—appellant was in a police car, handcuffed, for four hours—weighs heavily in favor of concluding appellant was "in custody" for purposes of the walkthrough statement. While the Supreme Court has not adopted a bright-line rule for when the duration of a detention transforms the detention into an arrest, the Court has held that a 90-minute detention violated the Fourth Amendment. *See United States v. Place*, 462 U.S. 696, 709–10 (1983) ("Thus, although we decline to adopt any outside time limitation for a permissible *Terry* stop, we have never approved a seizure of the person for the prolonged 90-minute period involved here and cannot do so on the facts presented by this case.") (applying *Terry*, 392 U.S. 1). Moreover, in *United States v. Sharpe*, the Supreme Court explained, "In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of

8

investigation that was likely to confirm or dispel their suspicions quickly." *Sharpe*, 470 U.S. 675, 686 (1985). Here, there is no evidence in the record as to why four hours were required to investigate the crime scene.

These circumstances rise above the level of an investigative detention under Supreme Court precedent. *See Place*, 462 U.S. at 709–10; *Sharpe*, 470 U.S. at 686; *see also Wexler*, 625 S.W.3d at 167–68 (for interrogation to be custodial due to deprivation of freedom of action or movement, "the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention"). Likewise, a reasonable person handcuffed for four hours in the back of a patrol car, without ever being told he was not under arrest or that he could leave, would believe his freedom of movement had been significantly restricted, to the degree associated with formal arrest. *See Dowthitt*, 931 S.W.2d at 254–55. We conclude the trial court erred when it declined to suppress the walkthrough statement, given that appellant gave the statement in response to interrogation from officers, while he was in custody, and before he had been warned under *Miranda* and article 38.22. *See Miranda*, 384 U.S. at 444; Tex. Code Crim. Proc. Ann. art. 38.22.

## 2. Station statement

After the walkthrough statement, appellant agreed to take a polygraph test at the station, after which Garcia explained to appellant that appellant was not under arrest. While appellant was handcuffed during the drive to the station, it was explained to him that this was due to departmental policy, and appellant's handcuffs were removed after transport to the station. Before the polygraph examination began, Simmons told appellant the exam was voluntary and that appellant was free to leave at any time. After appellant consented to speak with Garcia, he was taken to an interview room where he was not handcuffed or

otherwise restrained. Before taking the statement, Garcia informed appellant that the statement was voluntary and appellant was free to leave, and several minutes into the statement Garcia reiterated that the statement was voluntary, and that appellant was not under arrest and was free to leave.

Applying the *Dowthitt* factors, appellant was not physically deprived of his freedom of action in any significant way and was not told by a law-enforcement officer that he could not leave during the station interview. *See Dowthitt*, 931 S.W.2d at 255 (factors 1 and 2). Likewise, the law-enforcement officers involved did not create a situation that would lead a reasonable person to believe his freedom of movement had been significantly restricted; instead, appellant was not handcuffed or confined and was told on several occasions he could leave.[2] *See id.* (factor 3). Finally, even if there had been probable cause to arrest, law-enforcement officers did not withhold from appellant that he was free to leave, but rather told him that he was, in fact, free to leave. *See id.* (factor 4). Accordingly, none of the *Dowthitt* scenarios support appellant's argument that he was "in custody" during the station statement. *See id.*; *see also Estrada v. State*, 313 S.W.3d 274, 295 (Tex.

---

[2] At oral argument, appellant's lawyer cited a recent case from the First Court of Appeals, *In re J.J.*, for the proposition that a person may be in custody even if he is told he can leave. *J.J.*, 651 S.W.3d 385, 395–96 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (en banc). The facts of that case are substantially different, however. In *J.J.*, a juvenile was interrogated at school. The First Court explained, "the request from two police officers to talk to them in an isolated interrogation room was not framed as a choice with full information, but as a condition to return to class." *Id.* During the station statement in this case, by contrast, the decision to talk to the police was framed as a choice without conditions.

Appellant's lawyer also discussed *United States v. Cavazos*, in which the Fifth Circuit determined that law enforcement's statements to an individual that an interview was "non-custodial" were not determinative of the custody issue. *Cavazos*, 668 F.3d 190, 195 (5th Cir. 2012). The Fifth Circuit explained that, "to a reasonable lay person, the statement that an interview is 'non-custodial' is not the equivalent of an assurance that he could terminate the interrogation and leave." *Id.* (quotation omitted). Here, unlike in *Cavazos*, the trial court's unchallenged findings indicate that law enforcement made statements to appellant before and during the station statement that appellant was, in fact, free to leave.

Crim. App. 2010) (questioning at station was not custodial when "the police told appellant several times that he was free to leave, that appellant also acknowledged that he came to the station voluntarily and did not 'have to be [t]here anymore,' and that appellant stated several times that he wanted to leave and go home").

We conclude appellant was not "in custody" when he made the station statement and accordingly the trial court did not err by declining to suppress the station statement.

### 3. Harm

In a criminal case, the erroneous denial of a motion to suppress a statement taken in violation of *Miranda* is constitutional error subject to review under the standard set forth in Texas Rule of Appellate Procedure 44.2(a). Tex. R. App. P. 44.2(a). Under Rule 44.2(a), "[i]f the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *Id.* The emphasis of the harm analysis under Rule 44.2(a) should not be on the propriety of the outcome of the trial. *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). Specifically, "the question for the reviewing court is not whether the jury verdict was supported by the evidence. Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict." *Id.* In reaching that decision, we may consider (1) whether the recorded statement was cumulative of other evidence, (2) the importance of the recorded statement to the State's case, (3) the probable weight a juror would place upon the recorded statement, (4) the presence or absence of evidence corroborating or contradicting the recorded statement on material points, and (5) the overall strength of the prosecution's case. *See id.*;

*Jones v. State*, 119 S.W.3d 766, 778 (Tex. Crim. App. 2003)

As previously discussed, the trial court erred when it did not suppress the walkthrough statement, during which appellant indicated that the gun had gone off by accident during a struggle between him and complainant, but did not err by admitting the station statements, during which appellant indicated that he intentionally shot complainant when she threatened to take the gun from him. The jury ultimately found appellant guilty of murder, which under the facts of this case constitutes either (1) intentionally or knowingly causing the death of an individual or (2) intending to cause serious bodily injury and committing an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1), (2). Accordingly, to reach its verdict, the jury necessarily must have *disbelieved* appellant's walkthrough statement in which he indicated the gun went off accidentally, as the jury was required to determine that appellant acted intentionally to convict appellant of murder. Moreover, while the conflicting nature of the walkthrough and station statements may have damaged appellant's credibility, the State's case was premised on the station statement in which appellant indicated that he intentionally shot complainant, not the erroneously admitted walkthrough statement in which appellant indicated the shooting was an accident. *See Foyt v. State*, 602 S.W.3d 23, 45 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (concluding that, "although appellant's falsehoods tend to incriminate him," error in admitting statements was not harmful in light of other evidence). Indeed, it was *appellant*, not the State, who based his defense on the purportedly accidental nature of the shooting as related in the walkthrough statement. Under the particular facts of this case, we conclude beyond a reasonable doubt that the erroneous admission of the statement did not contribute to the jury's verdict. *See* Tex. R. App. P. 44.2(a); *Foyt*, 602 S.W.3d at 44–45.

12

Determining no harm resulted from the trial court's error, we overrule issue 2.

## III. CONCLUSION

We affirm the trial court's judgment as challenged on appeal.

/s/    Charles A. Spain
Justice

Panel consists of Justices Spain, Poissant, and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).