# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 9, 2023

Lyle W. Cayce
Clerk

———————

No. 23-30038

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ALEXANDER D. PENNINGTON,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:21-CR-130-2

_____

Before JONES, BARKSDALE, and ELROD, *Circuit Judges*.

PER CURIAM:[*]

Alexander D. Pennington entered a conditional-guilty plea to conspiring to advertise the distribution of child pornography, in violation of 18 U.S.C. § 2251(d)(1), (e), reserving his right to contest the denial of his motion to suppress evidence. He contends his statements to law enforcement should have been suppressed because he: was in custody; did

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

not waive his *Miranda* rights; and made a limited but unambiguous request for counsel.  Pennington was not in the requisite custody.  AFFIRMED.

## I.

On the morning of 7 July 2021, law enforcement executed a search warrant based on an investigation into a private chat room dedicated to the advertisement and distribution of child pornography.  The investigation led law enforcement to Pennington's residence in Las Vegas, Nevada.  (He had recently been granted parole after serving ten years for sexually assaulting a child under 14 years old.)

Around 15 law-enforcement agents, some dressed in tactical gear and carrying AR-15-style rifles, surrounded the residence and, using a loudspeaker, ordered the occupants out.  After no response, the agents forcefully opened the door with a ram and continued to order the occupants to exit.  The three occupants were placed in handcuffs while agents conducted a five-minute protective sweep of the residence.  The occupants were then released from their handcuffs, and Pennington's mother and uncle, but not Pennington, were allowed to re-enter the residence.

Agent Walch, not in uniform or displaying police insignia or visible firearm, approached Pennington and informed him:  he was not under arrest (there was no arrest warrant for him); but wanted to speak with him about why a search warrant was being executed at his residence.  After the Agent explained who he was, he and Pennington walked to the Agent's vehicle:  an unmarked SUV without a "cage", parked about 15 to 20 yards away.  The Agent sat in the driver's seat, Pennington in the front passenger's seat, and a detective with the Las Vegas Metropolitan Police Department behind Pennington.

Agent Walch told Pennington:  he was not under arrest; the vehicle doors were unlocked; and he was free to leave at any time.  The Agent

removed a digital recorder from his pocket; but Pennington objected to its use and told the Agent that, if the interview was going to be recorded, he would want an attorney. After the Agent responded that the purpose of the recorder was so "neither party can claim the other one made any statements that aren't true", Pennington "agreed to allow [the Agent] to turn the recorder on".

Pennington contests these facts, asserting he: was not released from handcuffs; requested an attorney before the Agent produced the recorder; was threatened with arrest if he did not speak; and was restricted from helping his panicking mother.

The recording captures a 30-minute interview. Pennington was advised of—and, when asked, stated he understood—his *Miranda* rights. The Agent then asked Pennington if he was willing to talk, and Pennington "paused for a moment". The Agent continued: "with the understanding that if you change your mind later you can stop this conversation at any time". The Agent testified Pennington nodded his head in affirmance.

A magistrate judge's report and recommendation (R&R) recommended, and the district court concurred, that Pennington was willing to talk. Pennington asserts on appeal he was not and did not nod his head in affirmance.

Pennington then said: "now that we are on the record, if you can go ahead and explain to me what it is". During the 30-minute interview, Pennington made several incriminating statements about his activities in the online chat room.

Following the interview, the Agent re-entered the residence to assist other agents and returned to his vehicle to conduct a separate, recorded three-minute interview with Pennington that is not the subject of the motion to suppress. Pennington and the Detective remained in the vehicle during

No. 23-30038

the Agent's 25-minute absence. Pennington was not arrested at the conclusion of the search.

Approximately four months later, Pennington was indicted on nine counts: one for conspiracy to advertise the distribution of child pornography; one for conspiracy to distribute child pornography; and seven for distribution of child pornography, in violation of 18 U.S.C. §§ 2251(d)(1), (e), 2252A(a)(2), (a)(2)(A), (b)(1). Pennington moved to suppress the statements he made during the 30-minute interview, maintaining: law enforcement did not honor his request for a lawyer; and he did not knowingly and intentionally waive his *Miranda* rights. The Government responded that, *inter alia*, he was not in custody.

Following an evidentiary hearing before the magistrate judge, at which Agent Walch and Pennington testified, and at which the Government introduced into evidence the audio recordings of the 30- and three-minute interviews, the resulting R&R found the Agent's testimony was credible; Pennington's, not credible. The R&R stated the Agent's testimony was "consistent with what the recordings actually reveal[ed]", and recommended: the suppression motion be denied because Pennington was not in custody and therefore did not have the right to an attorney; he did not make an unequivocal and unambiguous request for an attorney and withdrew his objection after the Agent's explanation; and he "made a knowing and voluntary waiver of his *Miranda* rights and agreed to the recorded interview without counsel".

Pennington objected to the R&R. The district court, after "thoroughly review[ing] the record, including the written objections filed" against the R&R, "concurr[ed] with the findings of the Magistrate Judge under the applicable law" and denied the motion.

## II.

Pennington contests the denial of his motion to suppress his incriminating statements because he: was in custody, warranting constitutional protections; made a limited but unambiguous request for counsel; and did not waive his *Miranda* rights.

For the contested denial of a suppression motion, findings of fact are reviewed for clear error; legal conclusions, *de novo*. *E.g.*, *United States v. Nelson*, 990 F.3d 947, 952 (5th Cir. 2021). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Wright*, 777 F.3d 769, 773 (5th Cir. 2015) (citation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Harris*, 740 F.3d 956, 967 (5th Cir. 2014) (citation omitted). "The question of whether *Miranda*'s guarantees have been impermissibly denied to a criminal defendant, assuming the facts as established by the trial court are not clearly erroneous, is a matter of constitutional law, meriting *de novo* review." *United States v. Harrell*, 894 F.2d 120, 122–23 (5th Cir. 1990). The evidence is viewed in the light most favorable to the prevailing party in district court—here, the Government. *E.g.*, *Wright*, 777 F.3d at 773, 777.

First at issue is whether Pennington was in custody. If so, we reach whether his request for counsel was sufficient and honored by Agent Walch. But, if not in custody, we need not reach the two other presented issues because "the *Miranda-Edwards* guarantee . . . relates only to custodial interrogation". *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991).

Merely advising a suspect of his *Miranda* rights, as in this instance, does not convert the encounter into a custodial interrogation. *E.g.*, *United States v. Akin*, 435 F.2d 1011, 1013 (5th Cir. 1970) ("[A] custodial situation cannot be created by the mere giving of modified *Miranda* warnings".). And,

"[w]hether a suspect is in custody is an objective inquiry that depends on the totality of circumstances". *Wright*, 777 F.3d at 774 (citations omitted).

"A suspect is . . . in custody for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id.* (alteration in original) (citation omitted). "Two discrete inquir[i]es are essential to the determination:  first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012) (citation omitted).

"The requisite restraint on freedom is greater than that required in the Fourth Amendment seizure context." *Wright*, 777 F.3d at 774. "The critical difference between the two concepts . . . is that custody arises only if the restraint on freedom is a certain degree—the degree associated with formal arrest." *United States v. Bengivenga*, 845 F.2d 593, 598 (5th Cir. 1988). Therefore, our court considers several factors—for which "no one fact is determinative"—in deciding custody *vel non* in the *Miranda* context:  "the length of the questioning"; "the location of the questioning"; "the accusatory, or non-accusatory, nature of the questioning"; "the amount of restraint on the individual's physical movement"; and "statements made by officers regarding the individual's freedom to move or leave". *Wright*, 777 F.3d at 775.

Along that line, the parties contest whether the factual circumstances at hand are more like those in *Cavazos* or *Wright*. *Cavazos*, 668 F.3d at 195 (*affirming grant* of suppression motion); *Wright*, 777 F.3d at 777, 784 (*affirming denial* of suppression motion). Pennington concedes in his reply

brief that the line between the two cases is a "fine one". His comparison to *Cavazos* is unavailing; the facts at hand are almost indistinct from those in *Wright*, where our court weighed the above-described factors and held Wright was not in custody. *Wright*, 777 F.3d at 775–77. In addition, as noted in *Wright*, because Cavazos prevailed in district court, the evidence was viewed on appeal by the Government in the light most favorable to Cavazos; the opposite was applicable in *Wright*. *Id.* at 776.

In *Wright*, as here, defendants were removed from their home in the early morning by more than 12 officers. *Id.* at 777. In *Wright* and here, defendants were not forced to enter an officer's unmarked vehicle located near the residence and were told several times they were not under arrest and free to leave. *Id.* at 771–77; *see also United States v. Michalik*, 5 F.4th 583, 589 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 910 (2022) (affirming district court's finding defendant was informed he could leave; and, therefore, was not in custody); *United States v. Gonzalez*, 814 F. App'x 838, 845 (5th Cir. 2020) (defendant "not in *Miranda* custody when he made his unwarned statements").

Additionally, and as discussed, Pennington was interviewed for only 30 minutes in the challenged interview. *See United States v. Coulter*, 41 F.4th 451, 459 (5th Cir. 2022) (noting 30-minute interview suggests defendant not in custody); *and United States v. Ortiz*, 781 F.3d 221, 233 (5th Cir. 2015) (noting 20-to-30 minute encounter "suggests [defendant] was not in custody").

Pennington attempts to distinguish his case from *Wright* by noting Wright was never handcuffed and testified the officers told him he was free to leave and was not under arrest. In his reply brief, however, Pennington concedes that, viewing the evidence in the requisite light most favorable to the Government, his handcuffs were removed. In *Ortiz*, our court discussed

the effect of handcuffing, stating: "[T]he fact that the agents eventually handcuffed him would suggest to a reasonable person that he was not free to leave". 781 F.3d at 231. Although Pennington was temporarily handcuffed, he was not alone: he and the other two occupants were handcuffed at the same time, but only during the five-minute protective sweep of the residence. Additionally, he was not singled out, as in *Cavazos* or *Ortiz*.

Pennington also fails to show the requisite clear error in the district court's concurring in the R&R's findings that Pennington was told he was not under arrest and the doors to the vehicle were unlocked. *See Coulter*, 41 F.4th at 461 ("Informing a suspect he is not under arrest, [even without] explicitly tell[ing] him he [is] free to leave[,] . . . . would [also] suggest to a reasonable person that he [is] free to leave[.]" (alterations in original) (citation omitted)).

Viewing the totality of the circumstances in the requisite light most favorable to the Government, Pennington was not in custody. Accordingly, his motion to suppress was properly denied.

### III.

For the foregoing reasons, the judgment is AFFIRMED.